**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF MISSISSIPPI**
**SOUTHERN DIVISION**

**JAEL FRAISE, # 108460**                                                    **PETITIONER**

**VERSUS**                                                    **NO. 1:10cv266-HSO-JMR**

**MARGARET BINGHAM**                                                    **RESPONDENT**

## REPORT & RECOMMENDATIONS

This cause comes before the Court on Petitioner Fraise's Petition [1] for Writ of Habeas Corpus filed June 14, 2010.  The Respondent filed a Response [13] on September 16, 2010. This Court, having been advised in the premises and having considered the entire record, including the lodged state court record, the Petition [1] and Memorandum [2] in Support, the Response [13] and all relevant law, recommends that the Petition [1] for Writ of Habeas Corpus should be denied.

## FACTS

Around 9:00 p.m. on September 25, 2006, a man charged through the doors of a Pit Stop convenience store in Picayune, Mississippi brandishing a black and silver handgun, disguised in black pants, a black long sleeve shirt, a black mask, and black gloves. The assailant grabbed a customer by the arm and, using her as a hostage and shield, pushed her to the counter, pointed his weapon at the clerk, Grant Stevens, and demanded he empty the cash register contents into a bag. While Stevens emptied the register, the perpetrator turned his attention behind him where another employee of the Pit Stop, Jeanette Quintana, was on break at a table and warned her not to move.

Once the cash register was emptied, a total of $425, the man released the customer and fled the store. Following closely behind him was Stevens, who pursued the perpetrator so as to get an identification of the vehicle used in the getaway. Stevens witnessed the man run towards a red

Oldsmobile and enter the passenger door. The car sped off, but not before being forced by a fire hydrant near the back of the lot to quickly back up and change course. It was during this brief maneuver that Stevens noticed that the reverse lights on the vehicle stretched across the whole rear of the car, and that it had an auction tag taped in the back window.

While Stevens pursued the getaway car, Quintana called 911 and the police arrived on the scene. When Stevens returned from chasing the vehicle, he described to officers the red Oldsmobile with the light bar and auction tag, and the direction it was heading. The officers on the scene quickly issued a "be-on-the-lookout," or BOLO, for a vehicle of matching description and took statements from Quintana, Stevens, and the customer.

That night, deputy Rhonda Poche was on patrol in Picayune. She had heard the BOLO go out and was looking in the area near the Pit Stop when she heard over her radio that a red Oldsmobile had been spotted at the Arbor Gate Apartments not far from the store. Poche headed to the apartments. She knew Arbor Gate well; not only did she live there, she also served as a security guard at the complex while off-duty. When she arrived, she found officer Scott Wagner, the officer that first identified the vehicle and had secured the scene. Along with matching the description of the BOLO, Wagner had felt the hood of the car upon arrival and found it very warm, as if the car was just parked. Rhonda remembered the vehicle-she lived in an adjacent building-and recalled the man who had used the vehicle but could not place his name. After making a call to the manager of the complex, she was told the car belonged to Jael Fraise.

Soon, an officer arrived on the scene with Stevens. He walked around the vehicle, noticing the wet tires, the grass clippings, and fresh undried mud in the wheel wells, the temporary tag in the window, and the light bar across the back and made a positive identification. Several officers then went to Fraise's apartment and knocked on the door, but there was no answer.

The next day, the police called Quintana, Stevens, and the customer to the station and conducted a photo lineup. Quintana had told officers the night of the robbery that because the perpetrator's mask was pulled so tight, she was able to recognize him as a regular customer who frequented the store a few times a week. Immediately, Quintana identified Fraise as the perpetrator. That same day police searched Fraise's apartment and found a black mask, black gloves, stacks of bills in small denominations, and a picture taken by Fraise of himself with a mobile phone in the computer printer. In the picture was Fraise and in front of him on the table, a black and silver handgun.

A warrant was issued September 27, 2006, for Fraise's arrest. He was eventually found in California in March of the following year and was extradited to Pearl River County to await trial. Fraise was indicted on two counts: armed robbery and possession of a firearm by a convicted felon. After a two-day trial, Fraise was convicted of both counts and, as a habitual offender, was sentenced to consecutive life sentences in the custody of the Mississippi Department of Corrections.

Fraise appealed his convictions to the Mississippi Supreme Court. The Mississippi Court of Appeals affirmed his convictions by written opinion dated March 31, 2009. *Fraise v. State*, 17 So. 3d 160 (Miss. Ct. App. 2009). Fraise then filed a petition for Post-Conviction Relief ("PCR") with the Mississippi Supreme Court. That petition was denied by Order on May 4, 2010. *Fraise v. State*, No. 2009-M-0175 (May 2, 2010).

Fraise filed the instant Petition  for Writ of Habeas Corpus with an accompanying Memorandum in Support on June 14, 2010, raising the following grounds for relief:

1.  Whether the prosecutor's arguments and questions no flight circumvented the trial courts [sic] ruling making such evidence inadmissable denying petitioner a fair trial and due process.

2.  Whether trial counsel's failure to object to the States [sic] use of flight evidence contradicted his previous strategy amount [sic] to ineffective assistance of counsel and denying petitioner a fair trial.

3.  Whether the state's failure of defense to provide the defense with the substance of oral statements made by three of its witnesses constitute [sic] Due Process under the U.S. or Miss. [sic] Constitutions and URCCC 9.04 denying petitioner a fair trial.

4.  Whether trial counsel was constitutionally ineffective by failing to object to the state's use of undisclosed evidence.

5.  Whether trial counsel was ineffective for not motioning the court for a mistrial under due process and URCCC 9.04, and in failing to investigate and inform the petitioner of the state's intentions to use Holly Krantz as a rebuttal to Astrid Hernandez alibi testimony prior to making the decision to proceed to trial with only one alibi witness and failing to advocate petitioners [sic] cause.

6.  Whether trial counsel was ineffective by failing to object to hearsay testimony of Rhonda Poche, and the state's presentation of that hearsay as facts during its closing.

7.  Whether the trial court errored [sic] by not declaring a mistrial or in the alternative admonish the jury to ensure they were not influenced and therefore prejudiced against the Petitioner or so distrated [sic] by juror number one that a fair trial and verdict was impossible.

8.  Whether trial court's failure to fully advise Petitioner of all the facts that relate to his federal and state constitutional rights to testify amount to ineffective assistance of counsel depriving him of a fair trial.

9.  Whether prosecutorial comments, arguments, and efforts to impeach witnesses during trial amounted to misconduct denying petitioners [sic] right to a fair trial.

10. Whether trial counsel was ineffective by failing to object to the various instances of prosecutorial misconduct.

11. Whether trial counsel's stipulation to jury instruction #10 unreasonable and deprived petitioner a fair trial.

12. Whether it was reasonable and effective assistance of my counsel to stipulate petitioner's prior convictions and to have done so without any request for a limiting instruction.

13. Whether petitioner was denied a fair trial when jury instruction #7 was given, singled out and given prominence, and in trial counsel's allowing it by either stipulation or failing to object, and appellate counsel's failure to raise the issue or direct appeal.

14. Whether trial counsel was ineffective for eliciting irrelevant character testimony from defense witness Joe Blank, opening the door for other character evidence presented by the state on cross-examination.

15. Whether trial counsel was ineffective for not motioning the court to suppress the impermissibly suggestive photo lineup even after petitioner demanded he do so.

16. Whether the photographic lineup was impermissibly suggestive and amounted to irreparable misidentification in violation of Due Process.

17. Whether trial counsel was ineffective for failing to object to the in-court identification made by Ms. Quintana and Det. Clark which was based on their out-of-court identification.

18. Whether trial counsel was ineffective for failing to request jury instructions outlining the law related to the defense of alibi and eyewitness identification.

19. Whether it was prejudicial error to allow the state to introduce and use as evidence the date the arrest warrant was issued, denying petitioner a fair trial.

20. Whether trial counsel was ineffective for challenging Quintana's identification for the first time during trial, and before the jury.

21. Whether petitioner's right guaranteed him by the Fourth Amendment were violated when the Picayune police searched his residence without warrant and used seized evidence therefrom at trial during him his Sixth and Fourteenth Amendment rights.

22. Whether the testimony from Holly Krantz was based on information obtained during two (2) separate searches, both in themselves in violation of the Fourth Amendment.

23. Whether trial counsel was ineffective for failing to motion for the suppression of evidence that was seized during a warrantless search of petitioner's apartment.

24. Whether trial counsel was ineffective in introducing into evidence Det. Clark's police report.

25. Whether petitioner was denied a fair trial when through trial he was accompanied by at least two and sometimes three armed guards who sat with him or directly behind him throughout trial.

26. Whether trial counsel's failure to investigate amount [sic] to ineffective assistance of counsel.

27. Whether petitioner's trial counsel was ineffective for failing to present his defense according to his version of the facts and instead presented a [sic] adverse version which prejudiced the defense and aided the state's case depriving him of his rights guaranteed him by the sixth and fourteenth amendments [sic].

28. Whether trial counsel's failure to Motion [sic] for discovery had a prejudicial effect on his right to a fair trial guaranteed him by the Sixth and Fourteenth Amendments.

29. Whether petitioner's trial counsel was constitutionally ineffective in his failure to request or subpoena the 911 call recording to determine its substance and possible use to the defense.

30. Whether the cumulative of all errors rise to the level of prejudice which would deny petitioner a fair trial and effective assistance of counsel.

Pet'n [1].

**II.**

The authority of this Court to issue habeas corpus relief for persons in custody of the state is granted by 28 U.S.C. § 2254 as amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). The text of § 2254 states:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State Court shall not be granted with respect to any claim that was adjudicated on the merits in State Court proceedings unless that adjudication of the claim-
>
>> (1) resulted in a decision that was contrary to, or an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States; or
>>
>> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State Court proceeding.

28 U.S.C. § 2254.

As a threshold matter, this Court must first determine whether the state court adjudicated Fraise's claims on the merits, and therefore must apply the standards of 2254(d)(1-2), or on procedural or exhaustion grounds prompting an alternative analysis.

Federal courts presume that a state court adjudicated a claim on the merits when it has been presented with a claim and has denied relief absent an indication of reliance upon state procedural law. *Harrington v. Richter*, 131 S. Ct. 770, 784-85 (2011). By the terms of § 2254, a state court need not give an opinion or statement for the reasons of its denial, nor must a state court "cite or even be aware of cases under 2254(d)." *Id.* at 784. A claim will be analyzed under the terms of § 2254(d) "whether or not the state court reveals which of the elements in a multi-part claim it found insufficient, for § 2254(d) applies when a 'claim,' not a component of one, has been adjudicated." *Id.* It is now established that a state court summary ruling is an "on the merits" adjudication for § 2254 purposes. *Id.* at 785.

**III.**

The state argues, and this Court agrees, that Grounds One, Three, Seven, Nine, Thirteen, Nineteen, and Twenty-Five are procedurally barred.

**A.**

Federal judicial authority to grant the Great Writ is restrained by an over-arching commitment to state courts as the "principal forum for asserting constitutional challenges to state convictions." *Richter*, 131 S. Ct. at 787. "Federal intrusions into state criminal trials frustrate both the State's sovereign power to punish offenders and their good-faith attempts to honor constitutional rights." *Barber v. Johnson*, 145 F.3d 234, 238 (5th Cir. 1998) (internal quotation marks omitted) (quoting *Brecht v. Abrahamson*, 507 U.S. 619, 635 (1993)). Principles of comity and federalism also motivated the complimentary doctrines of exhaustion and the procedural bar ensure that petitioners first present their federal claims in state court, thus giving the State its rightful and proper "'opportunity to address those claims in the first instance.'" *Cone v. Bell*, 129 S. Ct. 1769, 1780 (2009) (quoting *Coleman v. Thompson*, 501 U.S. 722, 729 (1991)).

The procedural bar doctrine prohibits review of federal habeas claims not properly presented to the state courts: "When a petitioner fails to raise his federal claims in compliance with relevant state procedural rules, the state court's refusal to adjudicate the claim ordinarily qualifies as an independent and adequate state ground for denying federal review." *Id*. A procedural bar will not prevent habeas review of an issue unless the last state court that ruled on the claim "clearly expressed its reliance on an adequate and independent state law ground . . . ." *Harris v. Reed*, 489 U.S. 255, 263 (1989).

A state court's rejection is "independent" when its holding is grounded in a basis independent from the merits of the federal claim. To be recognized as an "adequate" procedural bar, the procedural rule must be "strictly or regularly applied evenhandedly to the vast majority of similar

claims." *Corwin v. Johnson*, 150 F.3d 467, 473 (5th Cir. 1998) (internal citations omitted). The adequacy of a state procedural bar is a determination reserved to the federal courts. *Cone*, 129 S.Ct. at 1780; *Lee v. Kemna*, 534 U.S. 362, 375 (2002). If the state procedural bar is decided to be independent and adequate, the federal court must refuse the claim unless the petitioner can show either "cause for the default and actual prejudice as a result of the alleged violation of federal law," or that the refusal of the federal to court to hear the claim would result in "a fundamental miscarriage of justice." *Coleman v. Thompson*, 501 U.S. 722, 750 (1991).

## B.

In Grounds One, Three, and Nine, Fraise argues that actions of the prosecutors at trial-their questioning of witnesses, impeachment of witnesses, and lack of evidentiary disclosures-resulted in a deprivation of due process. In Ground Sixteen, Fraise claims that the photographic line-up used by police investigators was improperly suggestive and resulted in a improper identification  in violation of his due process rights.[1] The Mississippi Court of Appeals held these claims to be procedurally barred by the contemporaneous objection rule: Fraise admitted that his counsel failed to preserve the issues by raising an objection at trial. *Fraise*, 17 So. 3d at 163. "[An] appellate court is not required to address issues that are not objected to at trial and preserved for appeal." *Id.* (citing *Chasez v. Chasez*, 957 So. 2d 1031, 1038 (Miss. Ct. App. 2007)). Federal courts have consistently found Mississippi's contemporaneous objection bar to be both adequate and independent. *See e.g., Johnson v. Puckett,* 176 F.3d 809, 823-24 (5th Cir. 1999); *Smith v. Black*, 970 F.2d 1383, 1387 (5th Cir. 1992).

Fraise argues that Mississippi courts do not apply the bar even-handedly when faced with

---

[1]The claim raised by Fraise in Ground Sixteen is identical to that raised in his motion for PCR-that the lineup was "impermissibly suggestive." Mem. [2] 29; S.C.R. [12-8] 49. Though the issue on direct appeal was termed as an error for failure to suppress, the substance of that claim was the same. S.C.R. [12-5] 15-16.

claims of prosecutorial misconduct and thus the bar is not adequate. When a procedural bar is argued to be inadequate, the petitioner "bears the burden of showing that the state did not strictly or regularly follow a procedural bar around the time of his appeal" and "must demonstrate that the state has failed to apply the procedural bar to claims identical or similar to those raised by the petitioner himself." *Stokes v. Anderson*, 123 F.3d 858, 860 (5th Cir. 1996).

Fraise has not done so; he cites two cases in which Mississippi appellate courts have excused the bar ten or more years before his appeal. Therefore, he defaulted his federal habeas corpus claims under the state procedural rule. *See Brown v. Mississippi*, 2011 WL 4386453 *3 (N.D. Miss. 2011). Furthermore, overlooking Fraise's failure to properly support his claim, in the few cases in which the Mississippi Supreme Court has excused the bar, the court was faced with "numerous instances of improper and prejudicial conduct" by a prosecutor. *Davis v.* State, 970 So. 2d 164, 169-170 (Miss. Ct. App. 2006) (addressing prosecutor's improper opening and closing statements, personal attacks on defense counsel, questions not based on evidence, and comments on the defendant's right to remain silent when the particular district attorney's office had been before the court three times in one year on prosecutorial misconduct charges); Lester *v. State*, 692 So. 2d 755, 781 (Miss. 1997) (considering prosecutorial questions and remarks that were not based in evidence and highly prejudicial). A rarely invoked, justice-minded exception is insufficient in itself to overcome the long-standing view of this Circuit that the contemporaneous objection rule is an adequate state procedural bar.

Fraise also argues that Ground One should not be procedurally barred because the issue was raised in his Motion for Judgment Notwithstanding the Verdict or New Trial presented to the state trial court judge. Fraise cites *Coleman v. State*, 603 So. 2d 843, 847 (Miss. 1992), to support his position, yet after a thorough review no such case could be found by this Court. In its search, the

Court did find a case designated by that citation but styled *Ahmad v. State*, 603 So. 2d 843 (Miss. 1992). In *Ahmad*, the Supreme Court of Mississippi does appear to hold that presenting an issue not preserved by objection at trial in a motion for a new trial preserves that issue for appeal. *Id.* at 846-47. ("In Mississippi, the broad rule governing preservation for review provides that if an appellant raises for review an issue not raised in the pleadings, transcript, or rulings, the appellant must have preserved the issue by raising it in a motion for new trial.") (citing MISS. CODE ANN. § 9-13-31). However, *Ahmad* was later distinguished by the Mississippi Supreme Court when clarifying the appropriate rule: "while certain issues are required to be raised in a motion for new trial, raising objections in a motion for a new trial which should have been made at trial has never been thought to cure the failure to object at the appropriate time." *Ross v. State*, 954 So. 2d 968, 987 (Miss. 2007) (quoting *Smith v. State*, 797 So. 2d 854, 856 (Miss. 2001)).

Fraise also attempts to circumvent the bar by arguing the state court decided Grounds One, Three, Nine, and Sixteen on the merits of the claims and as such, this Court must do the same. Setting aside whether the state court did actually entertain the merits of this issue, the state court unequivocally refused to address the issues because they were not properly preserved for review. *Fraise*, 17 So. 3d at 163. ("[W]e will not address these issued as they were not properly preserved for review on appeal.") "Where a state court has clearly expressed its reliance on a procedural bar . . . the fact that it alternatively rules on the merits will not vitiate the bar's validity." *Hughes v. Dretke*, 412 F.3d 582, 592 (5th Cir.2005).

Because Fraise has not pleaded cause and actual prejudice to excuse the default or that a "fundamental miscarriage of justice" will arise from the Court's refusal to entertain the claims, these claims are procedurally defaulted under Mississippi's contemporaneous objection bar, an adequate and independent state procedural rule.

**C.**

In reviewing Fraise's PCR petition, the Mississippi Supreme Court held that the claims constituting Grounds Seven, Thirteen, Nineteen, and Twenty-Five were procedurally barred pursuant to MISS. CODE ANN. § 99-39-21. The statute states:

> Failure by a prisoner to raise objections, defenses, claims, questions, issues or errors either in fact or law which were capable of determination at trial and/or on direct appeal, regardless of whether such are based on the laws and the Constitution of the state of Mississippi or of the United States,  shall constitute a waiver thereof and shall be procedurally barred.

Section 99-31-21(1) has also been regarded by this circuit as an adequate and independent state procedural bar. *Stokes v. Anderson*, 123 F.3d 858, 860 (5th Cir. 1997). With respect to all of these claims, Fraise argues that because the Supreme Court reached the merits of the claims, this Court may set aside the procedural bar. In its Order, the Supreme Court of Mississippi stated, "[n]otwithstanding the procedural bar, the panel finds [the] claims without merit." *Fraise v. State*, No. 2009-M-0175 (May 2, 2010). Fraise's argument is without merit: "[w]here a state court has clearly expressed its reliance on a procedural bar . . . the fact that it alternatively rules on the merits will not vitiate the bar's validity." *Hughes*, 412 F.3d at 592. These claims should be denied.

In Ground Thirteen, Fraise argues that jury instruction number seven was improper. Though this claim is procedurally barred, Fraise claims that his trial counsel's stipulation to the instruction or failure to object to it and his appellate counsel's failure to raise the issue on direct appeal resulted in a constitutionally unfair trial. In *Murray v. Carter*, the United States Supreme Court faced the question of cause and prejudice due to attorney error. 477 U.S. 478 (1986). The Court held that cause for procedural default due to attorney error turns on whether counsel was constitutionally ineffective. *Id.* at 488. If counsel represented petitioner in a manner satisfying the constitutional standard set forth in *Strickland v. Washington*, 466 U.S. 688 (1984), there is "no inequity in

requiring [the petitioner] to bear the risk of attorney error that results in procedural default." *Id.*

Jury instruction number seven was presented by the defense. S.C.R. [12-1] 42. It stated, in part, that: "Mr. Fraise and his attorney have stipulated to the fact that on or about September 25, 2006, Jael Fraise . . . was in fact a convicted felon." *Id.* This instruction relates back to a motion in limine filed by defense counsel, and granted by the court, requesting that the defense may stipulate to Fraise's prior felony conviction to keep out any testimony or documentary evidence of his past crimes.[2] Fraise was charged with, and convicted on, possession of a firearm by a felon. S.C.R. [12-1] 7; MISS. CODE ANN. § 97-37-5. One essential element to proving felony possession is that the defendant was in fact a convicted felon. *Id.* The stipulation requested by the motion in limine and its accompanying instruction minimized the prejudice that could result from evidence of the nature or number of Fraise's past convictions being presented by testimony to the jury at trial.

This trial strategy was sound and well within "the 'wide range' of reasonable professional assistance." *Harrington v. Richter*, 131 S.Ct. 770, 787 (2011)(quoting *Strickland,* 466 U.S. at 689). Because this was a reasonable trial strategy, his counsel was not deficient. Furthermore, the failure to raise the issue on appeal cannot constitute constitutionally ineffective assistance. "An attorney's failure to raise a meritless argument . . . cannot form the basis of a successful ineffective assistance of counsel claim . . . ." *United States v. Kimler,* 167 F.3d 889, 893 (5th Cir. 1999) (citing *Williams v. Collins*, 16 F.3d 626, 634-35 (5th Cir.1994)). Accordingly, Fraise's claim in Ground Thirteen is procedurally defaulted by an independent and adequate state bar and should be denied.

## IV.

## A.

---

[2]On September 13, 1996, in New Jersey, Fraise was convicted on two counts of carjacking and one count of kidnaping and served at least one year of the multi-year sentences imposed by the court. S.C.R. [12-1] 22.

The purpose of the AEDPA amendments to 28 U.S.C. § 2254 was to minimize the role of federal habeas courts to "prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." *Bell*, 535 U.S. at 693 (quoting *Williams v. Taylor*, 529 U.S. 362, 386 (2000)). In a habeas court's deferential posture, relief may only be granted under the "contrary to" clause of § 2254(d)(1) with a showing that the state court's decision was contrary to then clearly established federal law. Under the "unreasonable application" clause of § 2254(d)(1), only a showing that the state court unreasonably applied the correct federal legal principle to the facts of the case will support relief. *Bell*, 535 U.S. at 693. Third, relief may be granted if the state court decision "was based on an unreasonable determination of facts in light of the record before the state court." § 2254(d)(2). These are a difficult standards for a petitioner to meet; section 2254 is understood to "guard against extreme malfunctions in the state criminal justice system." *Harrington*, 131 S. Ct. at 785. The Great Writ is to be issued only when "there is no possibility fair-minded jurists could disagree that the state court's decision conflicts with [Supreme Court] precedents." *Id.*

The focus of any inquiry under the "unreasonable application" clause of § 2254(d)(1) is determining if the state court application of clearly established federal law was objectively unreasonable. *Bell*, 535 U.S. at 693. The Court has repeatedly asserted that an unreasonable application is wholly distinct from an incorrect one. "[A] federal habeas court my not issue the writ simply because the court concludes in its independent judgment that the relevant state-court decision applied clearly established law erroneously or incorrectly. Rather, the application must also be unreasonable." *Williams*, 529 U.S. at 408. In a § 2254(d)(1) analysis, federal courts are now limited "to the record that was before the state court that adjudicated the claim on the merits." *Cullen v. Pinholster*, 131 S. Ct. 1388, 1398 (2011); *Rabe v. Thaler*, - F.3d -, 2011 WL 3311756 *3 (Aug. 3, 2011) (recognizing the limitation of a federal habeas court to the state record as held in *Pinholster*.)

As a result, "a federal habeas petitioner must overcome the limitation of § 2254(d)(1) on the record that was before the state court." *Id.* at 1400.

The "contrary to" clause is similar to its § 2254(d)(1) counterpart in that the federal habeas court must weigh the state court decision against federal precedent. The analysis, however, is not focused on the application of federal law. Instead, federal courts must examine if the state court decision conflicts with clearly established federal law while also maintaining deference to state adjudications. Accordingly, the writ is to be issued only when "there is no possibility fair-minded jurists could disagree that the state court's decision conflicts with [Supreme Court] precedents." *Harrington*, 131 S. Ct. at 785.

When approaching a fact-based claim under § 2254(d)(2), a habeas court considers if the state court decision was grounded in an "unreasonable determination of facts in light of the record before the state court." § 2254(d)(2). In its analysis, a federal habeas court presumes that the underlying state court made sound factual findings. *Woods v. Quarterman*, 493 F.3d 580, 584 (5th Cir. 2007). That presumption is only rebutted, and thus an unreasonable determination proved, when the petitioner presents clear and convincing evidence of state court error. *Id.*

**B.**

In Grounds Twenty-One and Twenty-Two, Fraise alleges Fourth Amendment search and seizure violations. In Ground Twenty-One, he argues that a warrantless search of his home, and the use of evidence gathered during the search at trial, violated his Fourth Amendment rights. In Ground Twenty-Two, he argues that because the testimony of Holly Krantz was based on information gathered from an illegal search and seizure of his phone records, his Fourth Amendment rights were violated.

Generally, federal habeas courts are barred from reviewing Fourth Amendment claims. *Stone*

*v. Powell*, 428 U.S. 465 (1976). In *Stone*, the Supreme Court held that "where the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, a state prisoner may not be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search and seizure was introduced at his trial." *Id.* at 494. This Circuit has interpreted "an opportunity for full and fair litigation" to mean an opportunity to litigate, whether or not the defendant takes advantage of that opportunity. *Janecka v. Cockrell*, 301 F.3d 316, 320-21 (5th Cir. 2002). "If a state provides the processes whereby a defendant can obtain full and fair litigation of a Fourth Amendment claim, *Stone v. Powell* bars federal habeas corpus consideration of that claim whether or not the defendant employs those processes." *Caver v. Alabama*, 577 F.2d 1188, 1192 (5th Cir. 1978).

Fraise argues that he has not been afforded an opportunity to fully litigate the Fourth Amendment violations, or to develop the facts through an evidentiary hearing before any state court. Yet after a thorough review of the state court record, this Court finds that Fraise was afforded sufficient opportunity for "full and fair" litigation of his search and seizure claims to trigger the *Stone* bar.

Fraise had an opportunity to raise his claims in a pre-trial motion. Fraise filed a pre-trial motion addressing other issues; the fact that he failed to take advantage of this opportunity does not render the *Stone* bar inapplicable to his claim. *Id.* Fraise was also able to object to the evidence resulting from the allegedly illegal searches at trial. At the time the prosecution sought to introduce evidence from the search of Fraise's apartment, his counsel stated that the had no objection to the evidence as it was "found in a legal search of the defendant's apartment." S.C.R. [12-2] 147. When Detective Krantz was called as a rebuttal witness, Fraise's counsel initiated a bench conference to argue, successfully, that any testimony about the phone records should be suppressed because they

were allegedly obtained illegally. S.C.R. [12-4] 39.   During cross-examination of Krantz, counsel also moved to have the jury instructed to not consider her testimony as it was based on illegally obtained phone records. *Id.* at 42-43.

Fraise was also afforded an opportunity to raise these claims on direct appeal and in his PCR petition. On direct appeal, Fraise raised both of the search and seizure claims; each received individual attention in the opinion issued by the Mississippi Court of Appeals and were ultimately denied. *Fraise*, 17 So. 3d at 163-67. The issues were also presented in Fraise's PCR petition and likewise denied. *Fraise v. State*, No. 2009-M-01752 (Miss. May 4, 2010).

Fraise was afforded an opportunity for full and fair litigation of his Fourth Amendment claims in all stages of his trial: in pre-trial motions, during the trial itself, on direct appeal, and in seeking PCR relief. That Fraise disagrees with the resolution of his claims as raised before the various state courts is irrelevant. *Swicegood v. Alabama*, 577 F.2d 1322, 1324 (5th Cir.1978) (holding that the Stone bar applies despite an error by the state court in deciding the merits of a Fourth Amendment claim). If federal habeas courts were to allow consideration of Fourth Amendment claims upon a petitioner's disagreement with a state court's disposition of their claim, *Stone* "would be rendered meaningless." *Id.* Fraise's Fourth Amendment claims are barred by *Stone*, and should be denied.

## V.

The remainder of Fraise's claims allege ineffective assistance of counsel. All of these claims were brought forth either on direct appeal or in Fraise's PCR petition, and were all denied as not meeting the burden of *Strickland v. Washington*. 466 U.S. 668 (1984).

## A.

The *Strickland* standard is a highly deferential one, and likewise is the standard of § 2254. When coupled together, the review is "doubly deferential." *Cullen*, 131 S. Ct. at 1403. It is

imperative that the two standards be kept apart; the question under a *Strickland* review via § 2254 is not one of the reasonableness of counsel's actions, but rather "whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Id*. The *Strickland* standard "must be applied with scrupulous care," as an ineffective assistance claim may serve as a route to avoid defaults of waiver or raise issues not brought forth at trial thereby undermining "the integrity of the very adversary process the right to counsel is meant to serve." *Harrington*, 131 S. Ct. at 788.

For relief under *Strickland*, a petitioner must satisfy both prongs: first, that counsel's performance was deficient and second, that this deficient performance prejudiced the defense. *Strickland*, 466 U.S. at 687.  To establish a deficient performance, a petitioner must demonstrate that "counsel's representation fell below an objective standard of reasonableness." *Id*. at 688. A court reviewing a *Strickland* claim "must be highly deferential" and begin with "a 'strong presumption' that counsel's representation was within the 'wide range' of reasonable professional assistance." *Harrington*, 131 S. Ct. at 787 (quoting *Strickland*, 466 U.S. at 689). Embedded in the Sixth Amendment is a "constitutionally protected independence of counsel and . . . the wide latitude counsel must have in making tactical decisions." *Strickland*, 466 U.S. at 689. Further, a federal habeas court must be mindful that a general rule demands "more leeway [to] courts . . . in reaching outcomes in case-by-case determinations." *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004).

A showing of prejudice requires that "[t]he likelihood of a different result must be substantial," *Harrington*, 131 S. Ct. at 792, and that "counsel's errors were so serious as to deprive the defendant of a fair trial." *Strickland*, 466 U.S. at 687. The analysis does not turn on the possibility of a different result in the proceedings; it is focused on whether the deficiency of counsel "undermines the confidence in the outcome" and that the "trial cannot be relied on as having produced a just result." *Id*. at 694, 686.

**B.**

In Ground Two, Fraise claims that his trial counsel's failure to object to the prosecution's use of flight evidence constitutes constitutionally ineffective assistance of counsel. The defense filed a motion in limine to exclude all such evidence and Fraise asserts that by allowing the prosecution to present this evidence in violation of the court's ruling, he was deprived of a full and fair trial. S.C.R. [12-4] 26-27.

Fraise alleges that the prosecution improperly presented this evidence at three points during trial: in the cross-examination of Joe Blank and Astrid Hernandez and in its closing arguments. During the cross-examinations of Blank and Hernandez, the prosecution questioned both witnesses on their failures to inform police of Fraise's whereabouts after the crime and their conversations with him at the Pearl River County Jail. This questioning was not focused on introducing evidence about any flight of Fraise, rather it was permissible and relevant evidence as to the credibility of each witness. The following colloquy illustrates the state's intentions:

Q: When was the first time you saw him after the robbery?

A: I couldn't – probably in January.

Q: You saw him in January of 2007?

A: One time.

Q: And where was he?

A: In New Orleans.

Q: In New Orleans. Did you call the Picayune Police Department and tell them that Jael showed up?

A: No.

Q: You knew they were looking for him and didn't call him [sic]?

A: Right.

Q: Right. Because you didn't want him picked up, did you?

A: Right.

S.C.R. [12-4] 320. The prosecution did not elicit testimony from either Hernandez or Blank as to why or where Fraise fled; the state sought to put evidence of the witnesses' partiality before the jury through questions about any conversations with Fraise had while he was incarcerated in Stone County and their failure to aid law enforcement in his arrest. Because this was proper evidence of credibility, *see Davis v. Alaska*, 415 U.S. 308, 316 (1974) ("The partiality of a witness is subject to exploration at trial, and is always relevant as discrediting the witness and affecting the weight of his [or her] testimony."), and counsel cannot be ineffective for failing to raise a meritless objection, *Kimler,* 167 F.3d at 893, the failure to raise objections to the questioning of these witnesses cannot support a claim of ineffective assistance of counsel.

In its closing argument, the state quickly addressed Fraise's disappearance: "After September 25th, poof, he was gone. He was gone. Where did we finally get him? In California in March. Does he have an alibi? No." There are many ways defense counsel could properly address this glancing reference in closing. The Supreme Court has recognized that "[r]are are the situations in which the 'wide latitude counsel must have in making tactical decisions' will be limited to any one technique or approach." *Harrington*, 131 S.Ct. at 789 (quoting *Strickland*, 466 U.S. at 689). Fraise's counsel chose not to object; a common choice that weighs the prejudice of the statements made by the prosecution against the perceptions that may arise within the jury from over-objecting during closing arguments. *See Drew v. Collins*, 964 F.2d 411, 423 (5th Cir.1992) ("A decision not to object to a closing argument is a matter of trial strategy."); 3 FRED LANE, LANE'S GOLDSTEIN TRIAL TECHNIQUE § 23.39, at 42 (3d ed. 1991) ("Generally, jurors resent frequent objections, especially during closing arguments. They may theorize that such objections are rude and being interposed only to 'throw off' the attorney making the argument. Counsel should be sensitive to this attitude."). Fraise's counsel was not deficient.

However, assuming *arguendo* that counsel was deficient in failing to object, Fraise cannot prove the second prong of *Strickland*- prejudice. To find prejudice, this Court must conclude that the deficient performance by counsel was so grave that a substantial likelihood exists that but-for the error, the outcome of the trial would have been different. *Harrington*, 131 S. Ct. at 792. However, in considering the mention of Fraise's disappearance after the crime with the volume of evidence pointing to his guilt, this Court finds that no substantial likelihood of a different outcome exists. The jury was presented with a line-up identification, clothing and other evidence seized from Fraise's home, and an identification of the get-away car belonging to Fraise. After a thorough review of the record, it cannot be said with any certainty that an objection to this statement would have changed the outcome of the trial. Ground Two is denied.

In Ground Four, Fraise argues that trial counsel was constitutionally ineffective by failing to object to the prosecution's use of undisclosed evidence. Specifically, Fraise argues that the testimony of Rhonda Poche, Grant Stevens, and Holly Krantz was undisclosed prior to trial, and that the non-disclosure deprived him of an opportunity to defend himself against their testimony. Had counsel objected, Fraise contends, the testimony would have been deemed inadmissable.

According to the record before the Court, both Rhonda Poche and Grant Stevens were disclosed as potential witnesses in the State's Response to Discovery filed June 22, 2007. S.C.R. [12-1] 17, 15. Fraise claims that the substance of the Poche and Stevens' testimony, insofar as Mississippi rules require, was not disclosed. Yet Fraise has failed to present any evidence of how the testimony offered at trial differentiated with the information disclosed pursuant to state rules such that an objection by his counsel would be proper. A conclusory allegation of ineffective assistance of counsel does not entitle a petitioner to habeas relief. Without any evidence to the contrary, federal habeas courts are to presume that "counsel's conduct falls within the wide range

of reasonable professional assistance ... [and], under the circumstances, the challenged action 'might be considered sound trial strategy." *Strickland*, 466 U.S. at 689 (quoting *Michel v. Louisiana*, 350 U.S. 91, 101 (1955)).

State's witness Holly Krantz was not disclosed as a potential witness in the State's Response to Discovery. During the defense's case-in-chief, the state made an objection to the testimony of a potential alibi witness. S.C.R. [12-4] 27-28. During the colloquy that followed, defense counsel argued that if the alibi witness could not testify, then he would object to the calling of Officer Krantz. *Id.* at 28.  Defense counsel stated that he learned about the witness the day before trial; the state argued that counsel received notice of her testimony before trial because she was subpoenaed. *Id.* The trial  judge reserved ruling for when, or if, the witness was called. *Id.*

When Officer Krantz was called, defense did not object to her giving testimony, but did lodge an objection to prevent her from testifying about Fraise's phone records. S.C.R. [12-4] 40. Later, during cross-examination, defense again moved for the judge to direct the jury to disregard her testimony as it was the result of an illegal search of Fraise's phone records. *Id.* at 42-43. Yet counsel made no objection to her testimony on disclosure grounds.  Without any evidence from Fraise that she was not properly disclosed prior to trial, there is no basis to believe the objection had merit. A failure to object does not constitute deficient representation unless a sound basis exists for objection. *See Emery v. Johnson*, 139 F.3d 191, 198 (5th Cir.1997). Habeas courts cannot grant relief based on conclusory allegations. *See, e.g., Collier v. Cockrell*, 300 F.3d 577, 587 (5th Cir. 2002) ("This Court has made clear that conclusory allegations of ineffective assistance of counsel do not raise a constitutional issue in a federal habeas proceeding."). Accordingly, Ground Four is denied.

Ground Five also centers on the prosecution's use of Holly Krantz. Fraise contends that counsel was ineffective for: (1) not objecting or motioning the court for a mistrial upon the state's use of Krantz and (2) failing to investigate and inform Fraise about the state's intention to use Krantz as a rebuttal to his alibi witness. Fraise argues that had he been informed of the possibility that Krantz may offer rebuttal testimony to the alibi offered by Astrid Hernandez, and knowing his second alibi witness was unavailable, he would have not gone to trial. Instead he would have "asked for a continuance or that the state not be allowed to use Krantz." Pet'n. [2] 9.

In Ground Four, this Court considered any claims that counsel was ineffective for not objecting or motion the court for mistrial upon Krantz being called and decided them without merit. The failure to investigate claim remains. "[C]ounsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." *Strickland*, 466 U.S. at 691. The reasonableness of an investigation involves "not only the quantum of evidence already known to counsel, but also whether the known evidence would lead a reasonable attorney to investigate further." *Wiggins v. Smith*, 539 U.S. 510, 527 (2003).

After Krantz was called by the prosecution, Fraise's counsel made an objection to her use of any illegally obtained phone records. On cross-examination, counsel asked if the phone records were seized pursuant to any legal authority. When Krantz answered in the negative, he moved to have her testimony stricken. The judge denied the motion, and counsel proceeded with a thorough cross-examination of Krantz about the conversation in which she claimed Hernandez denied being with Fraise the night of the crime. In that examination, counsel was able to raise valid questions about whether Hernandez understood that Krantz was asking her about the night of the crime rather than asking her a more general question. S.C.R. [12-4] 45.  Nothing in the record suggests counsel failed to make a  reasonable investigation into Krantz, or made an unreasonable decision in the

depth of that investigation. Furthermore, Fraise has not presented any evidence as to what further information may have been found if a more thorough investigation could have been conducted.

Fraise alleges that if he had known about Krantz, he would have made an objection to the state's use of her testimony or moved for a continuance. First, this Court has settled the issue of objecting to her testimony-such a claim is meritless. Second, it is highly unlikely that the Court would have granted any such continuance. Similar to Fraise's failure to object claims, there is no conclusive evidence in the record that the state failed to advise Fraise of the state's intention to call Krantz timely before trial upon which to base such a motion. Furthermore,  Fraise requested a speedy trial making it unlikely any such continuance would be well-taken:

> [Y]our client is the one who demanded a speedy trial. . . . Other cases were moved to accommodate his demands for a speedy trial. He did his own discovery up until the point of hiring you. And, therefore, I told him before he hired you he demanded a speedy trial, we were going to trial today.

S.C.R. [12-4] 29. Again, a failure to motion the court does not constitute deficient representation unless a sound basis exists for the motion. *See Emery v. Johnson*, 139 F.3d 191, 198 (5th Cir.1997).

Because the record supports the conclusion that counsel's investigation was reasonable, and any motion made by counsel with regard to Krantz's testimony would be without merit, this Court finds that the state court's denial of this claim was not unreasonable. Accordingly, Ground Five is denied.

In Ground Six, Fraise claims that counsel was ineffective for failing to object to the hearsay testimony of Rhonda Poche and the state's use of that hearsay in its closing arguments. Fraise contends that counsel allowed Poche to testify that she learned of Fraise's ownership of the red Oldsmobile involved in the getaway from the manager of the apartment complex at which she and Fraise lived.

During Poche's testimony, counsel did object to her testimony about what she was told by the manager of the complex. S.C.R. [12-2] 104. The trial court sustained the objection. Counsel then requested a bench conference to ensure that any evidence about ownership of the vehicle would be excluded pursuant to the pre-trial motion in limine. *Id.* at 110-111. All testimony by Poche thereafter was based upon her personal knowledge; she testified that she had previously seen Fraise retrieve items from the car in her capacity as a security guard for the apartment complex. *Id.* at 112.

In closing, the state argued: ""[T]hey started talking . . . about that red Oldsmobile. . . . [Poche] called to find out who it was. We've identified the person now." S.C.R. [12-4] 55. At this, defense counsel objected and, as far as the statement referred to ownership of the car as gained from any conversation had by Poche, the objection was sustained. *Id.* Later, the state claimed: "Rhonda Poche gave us a name, Jael Fraise. She said he used the car. That's where we got the name." *Id.* at 66. As this statement was not based on any hearsay testimony, but rather from Poche's personal observations, there was no basis for a hearsay objection. "An attorney's failure to raise a meritless argument . . . cannot form the basis of a successful ineffective assistance of counsel claim . . . ." *Kimler,* 167 F.3d at 893.

Because counsel did object to the hearsay testimony of Poche, and the statements to which Fraise claims counsel erroneously failed to object were not based upon hearsay, Ground Six is without merit and should be denied.

In Ground Eight, Fraise claims that counsel was ineffective for failing to fully advise him of his constitutional right to testify on his own behalf. Specifically, Fraise argues that had counsel advised him that the court could rule his past convictions inadmissable or limit their use for impeachment purposes only, he would have "undoubtedly" testified.

As for any claims regarding failure to advise Fraise of his general rights to testify on his own behalf, those are denied. Fraise was apprised of his rights after the jury was empaneled:

> Mr. Fraise, I need to explain to you, you fully understand your right not to testify guaranteed to you by the Mississippi and the United States Constitution. And if you choose not to testify, nothing could be said or used against you. . . . But whether you do or don't testify is a decision you make. And as long as you and your attorney are in agreement about that decision, that's best left to y'all. The only thing I would need to know is if you wanted to testify, for some reason [your counsel] was preventing you form testifying, I just need you to tell me we need to have a conference. . . . Do you fully understand that?

S.C.R. [12-2] 45. Fraise responded that he understood. Later, before the defense began it case-in-chief, Fraise was again reminded of his rights. S.C.R. [12-3] 142.

A criminal defendant has the ultimate right to decide whether he will testify at trial, and his "attorney must both consult with the defendant and obtain consent to the recommended course of action." *Florida v. Nixon*, 543 U.S. 175, 187 (2004). "A defendant who argues that his attorney prevented him from testifying must still satisfy the two prongs of *Strickland*." *United States v. Harris*, 408 F.3d 186, 192 (5th Cir. 2005). There is "a strong presumption that counsel's decision not to place [a defendant] on the stand was sound trial strategy." *Sayre v. Anderson*, 238 F.3d 631, 635 (5th Cir.2001). Fraise produces no evidence that counsel did not advise him of the evidentiary landscape surrounding past convictions when facing a felon in possession of a firearm charge. This Court is faced with nothing but conclusory allegations that cannot form the basis for habeas relief.

Second, because Fraise was charged with felon in possession with a firearm, his prior convictions were admissible. In addition, as the felony convictions were handed down in September of 1996, and he was on parole for the crimes at least a year after his conviction, the evidence of these crimes would also have been admissible under Federal Rule of Evidence 609, though subject to Rule 403. Fraise is correct that the intimate details of the crimes would have been inadmissable; however, his counsel correctly informed him that evidence of his three prior felony convictions was admissible.

The jury would likely have been presented with details such as the nature of the crimes- two counts of carjacking and one count of kidnaping-and the sentence he received, including the fact that he was still on parole at the time of the crime.

It is certainly valid trial strategy to limit the exposure of such evidence to the jury, and the advice of counsel was not unreasonable. However, assuming *arguendo* that counsel was deficient, Fraise cannot prove prejudice. He has presented no details of the testimony he would have given and, considering the amount of evidence against him and the damaging evidence likely to come in if he had taken the witness stand, there is not a strong probability that the outcome would have been different had he taken the stand. This claim should be denied.

In Ground Ten, Fraise claims his counsel was ineffective for failing to object to prosecutorial misconduct. Fraise argues that the prosecutor improperly questioned both Astrid Hernandez and Joe Blank about his incarceration at the Pearl River County Jail and insinuated that Hernandez "would break the law and aid" Fraise in avoiding arrest. Pet'n. [2] 19. When the prosecution asked Joe Blank during cross-examination if he had visited Fraise in jail, defense counsel requested a bench conference and objected to the state's use of his incarceration. S.C.R. [12-4] 7-8.The trial judge sustained the objection, limiting the state to questions about any conversations the men may have had without any mentioning of imprisonment. Thereafter, the prosecution did not mention Fraise's incarceration, but did pursue questions about any conversations that may have taken place after his return to Mississippi-a proper line of questioning. As for any questions that implicated the honesty or impartiality of Hernandez or Blank, "the partiality of a witness is subject to exploration at trial, and is always relevant as discrediting the witness and affecting the weight of his [or her] testimony." *Davis*, 415 U.S. at 316.

Fraise also contends that counsel failed to object to improper comments made by the prosecutor during voir dire. The prosecutor stated:

> As the defendant sits here he is presumed innocent. He is presumed innocent until proven guilty. But I want to remind you that everybody at Parchman, Mississippi, is presumed innocent, also. So he's presumed innocent until we, the State, prove to you beyond a reasonable doubt that he's guilty. . .

S.C.R. [12-2] 34. In this statement, the prosecutor gave a correct statement of the law. It is axiomatic that every defendant is presumed innocent before proven guilty, even those who have been convicted of a crime and are serving a sentence of imprisonment. Counsel cannot be ineffective for failing to raise a meritless objections and thus, Ground Ten is without merit and should be denied.

In Ground Eleven, Fraise argues that counsel was deficient in stipulating to jury instruction number ten. Jury instruction ten, in relevant part, states:

> The court instructs the jury, as set out in jury instruction number seven, that if you find from the evidence in this case beyond a reasonable doubt that the defendant Jael Fraise is guilty of armed robbery then you are instructed to find the defendant guilty of possession of a weapon by a convicted felon as set out in Count Two of the indictment . . .

S.C.R. [12-1] 37. Fraise argues that because his counsel stipulated to Fraise being a convicted felon, as reflected in jury instruction number seven, tying his conviction of felon in possession to the armed robbery conviction thwarted his defense that he never owned a firearm. At trial, Fraise introduced evidence that he used fake guns as props in his photography business to suggest that had he committed the robbery, he did so with a fake gun. In Mississippi, it is a question of fact for the jury to determine whether an instrument used in a robbery was a "deadly weapon" as defined by Mississippi law.[3]

As Fraise correctly points out, the Mississippi Supreme Court has upheld armed robbery convictions based upon the finding that non-operative firearms are deadly weapons, *Duckworth v.*

---

[3]Mississippi law defines a deadly weapon as any object, article or means which, when used as a weapon is, under the existing circumstances reasonably capable of or likely to produce death or serious bodily harm to a human being upon whom the object, article, or means is used as a weapon. *Duckworth*, 477 So. 2d at 938.

*State*, 477 So. 2d 935, 938 (Miss. 1985) (upholding conviction based on jury finding that a starter pistol only capable of shooting blanks was a deadly weapon). Thus, a defense based upon the use of a fake gun in the robbery could theoretically result in a conviction for armed robbery without a conviction of felon in possession of a fire-arm.

Whether counsel stipulated to this instruction is unclear. The record is devoid of jury instruction deliberations. Further, the state offers no rebuttal evidence; it merely presents the argument that it could not distinguish which instruction Fraise referred to as number ten in his petition though it is clearly marked in the record, S.C.R. [12-1] 36, and the only instruction that linked the finding of guilt in Count One to finding guilt in Count Two. Faced with this situation, it is difficult for this Court to consider whether counsel's decision was deficient. Regardless, it is at the second requirement of *Strickland*, prejudice, where Fraise's claim still must fail.

To prove prejudice, the defendant must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. A reasonable probability is "a probability sufficient to undermine confidence in the outcome." *Id.* at 693–94. At trial, Grant Stevens, the store clerk who was robbed at gunpoint, testified that he "kept up on [guns]," and stated that the gun was only two feet away from him during the crime. He observed the gun for about 15 seconds and was able to give the police a description of the gun as a 2000 to 2002 nine-millimeter Beretta with a 15-round police-issue clip. S.C.R. [12-3] 118-19. Furthermore, during the search of Fraise's apartment, Officer Clark testified that he found a picture in the tray of the home computer of Fraise and a matching handgun. S.C.R. [12-2] 154. That picture was admitted into evidence and shown to the jury. *Id.*

With this evidence, and the fact that Fraise was believed by the jury to be the perpetrator of the armed robbery as reflected by his conviction on Count One, there is not a substantial likelihood that

but-for counsel's stipulation to this instruction Fraise would have not been convicted of felony in possession of a firearm. Thus, the state court's denial of this ground for relief was not unreasonable and this claim should be denied.

In Ground Twelve, Fraise claims that counsel was ineffective for stipulating to his past convictions without also requesting a limiting instruction. This issue was considered in Part III, C, and found to be a reasonable trial decision. The stipulation prevented the jury from hearing evidence of Fraise's past convictions. Because Fraise was charged with felon in possession of a firearm, these convictions were admissible. To keep the details of these convictions, carjacking and kidnaping, from the purview of the jury was within the 'wide range' of reasonable professional assistance. Further, because it was stipulated that Fraise was a convicted felon, no limiting instruction was necessary to prevent prejudice or if one would have been offered, it was likely to be denied. As counsel was not deficient, this claim is without merit, and should be denied.

In Ground Fourteen, Fraise claims that counsel was ineffective for eliciting irrelevant character evidence from Joe Blank thereby opening the door to such evidence on cross-examination by the state. Fraise argues that Blank was not intended as a character witness and that counsel's questioning "[a]llowed the jury to consider facts of my character which were irrelevant and immaterial" to his defense. Pet'n [2] 26.

*Strickland* obligates this Court to mind "the constitutionally protected independence of counsel and . . . the wide latitude counsel must have in making tactical decisions." 466 U.S. at 689. As a result of counsel's questioning, the state was able to ask about Fraise's multiple jobs, including his abrupt departure the day after the robbery occurred, however still bounded by the motion in limine barring evidence of flight and his past convictions. Fraise has failed to rebut the "strong presumption" that counsel's representation was within the "wide range" of reasonable professional assistance, *Id.* at 689,

in that he "made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Harrington*, 131 S.Ct. at 787 (quoting *Strickland*, 466 U.S. at 687). Thus, this claim should be denied.

In Ground Fifteen, Fraise claims that trial counsel was ineffective for not seeking to suppress the photo lineup identification. Fraise argues that the lineup was impermissibly suggestive in that the he was of the only individual of a light complexion in the photos presented to Quintana.

Under Mississippi law, a lineup is impermissibly suggestive when the accused is "conspicuously singled out in some manner from others, either from appearance or statements by an officer . . ." *York v. State*, 413 So. 2d 1372, 1383 (Miss. 1982) (citing *Foster v. California*, 394 U.S. 440 (1969)). Mississippi, following federal courts, applies the factors put forth in *Neil v. Biggers*, 409 U.S. 188, 199-200 (1972), in determining whether a lineup used by law enforcement is impermissibly suggestive: (1) the opportunity of the witness to view the criminal at the time of the crime; (2) the witness' degree of attention; (3) the accuracy of the witness' prior description of the criminal; (4) the level of certainty demonstrated by the witness at the confrontation; and (5) the length of time between the crime and the confrontation. *Dennis v. State*, 904 So. 2d 1134, 1134 (Miss. Ct. App. 2004).

The lineup was presented by law enforcement to Jeanette Quintana, the head clerk of the store the night of the robbery. Quintana was sitting approximately fifteen to twenty feet away from the counter, to the back of the assailant. S.C.R. [12-3] 54-55. After the assailant entered the store and grabbed a customer by the arm and approached the counter, he turned to Quintana, looked at her, and told her not to move. *Id.* at 56. Quintana stated that she had been robbed before and could not identify the perpetrator because she focused on the gun, but this time, with that experience, she focused on his face. *Id.* She testified that she got a good look at the perpetrator's face, and gave the police a description that he was about the other clerk's height, was a "mixed" guy, and that she had

recognized him as a regular customer who visited the store two or three times a week. *Id.* Quintana told the police that she did not know the customer's name, but if presented with his photograph, she would be able to recognize him because the mask he wore was stretched so tight, she could "basically see right through it." *Id.* at 58. The day after the robbery, Quintana was brought in and presented with the photo lineup. She was shown approximately ten photographs and, without suggestion from officials, did not hesitate in identifying Fraise as the perpetrator. *Id.* at 60-62.

Quintana had ample opportunity to view Fraise at the time of the crime; there is no evidence that the store was not well lit, he turned and faced her squarely to speak to her, and his mask was pulled tight enough to allow her to identify him as a regular customer. With past experience of being robbed at gunpoint, Quintana deliberately focused on the perpetrator's facial features in order to later give an identification. She gave police a a description to police that included skin color, height, and that he was a regular customer. When presented with the lineup a day after the crime, she did not hesitate in her identification of Fraise. Furthermore, after a review of the photos presented to Quintana found in the record, S.C.R. [12-5] 84-96, "the physical characteristics of the persons themselves are sufficiently similar to avoid suggestiveness." *Anderson v. State*, 724 So. 2d 475, 478 (Miss. Ct. App. 2004).

Considering the above factors, any motion made to the trial court to suppress the line-up would have been futile. "An attorney's failure to raise a meritless argument . . . cannot form the basis of a successful ineffective assistance of counsel claim . . . ." *Kimler,* 167 F.3d at 893. Thus, the state court was not unreasonable in its dismissal of this claim, and this ground for relief should be denied.

Fraise presents two additional claims relating to the identification made by Quintana. In Ground Seventeen, Fraise argues that counsel was ineffective for not objecting to the in-court identification by Quintana, and the testimony of Detective Clark recounting her identification. In Ground Twenty,

Fraise claims counsel was ineffective for failing to challenge the line-up in pre-trial motions rather than at trial before the jury. Fraise bases these claims on the impropriety of the lineup as urged in Ground Sixteen. As this Court found Ground Sixteen without merit because the lineup was not improper, these grounds for relief should also be denied.

In Ground Eighteen, Fraise contends that counsel was ineffective for failing to request jury instructions on the law related to his alibi defense and eyewitness identification. In reviewing ineffective of assistance claims based on jury instructions, it is a "well established proposition that a single jury instruction may not be judged in artificial isolation, but must be viewed in the context of the overall charge." *Cupp v. Naughten*, 414 U.S. 141, 146-47 (1973).

First, under Mississippi law, Fraise was not entitled to an eyewitness identification instruction. His conviction did not rest solely upon the testimony of an eyewitness; the state offered evidence of an identification of a getaway car belonging to Fraise, items found in his apartment similar to those used by the perpetrator to disguise his identity, stacks of bills found in his apartment in denominations similar to those taken from the store, and a picture of Fraise with a gun similar to that used in the robbery. Because he was not entitled to an eyewitness identification jury instruction, *Powell v. State*, 925 So. 2d 878, 884 (Miss. Ct. App. 2005), counsel cannot be found deficient for failing to request one.

The consideration of whether counsel was deficient in failing to raise an alibi instruction is frustrated by a record  incomplete with regard to jury instructions-neither the rejected jury instructions nor jury instruction deliberations are included. However, despite this deficiency, Fraise fails to show prejudice. Taking the instructions as a whole, the jury was well-informed that the burden rests with the state to prove all elements beyond a reasonable doubt. S.C.R. [12-1] 38, 40, 41. Considering the weight of the evidence presented against Fraise and that of his defense, in

combination with the instructions taken as a whole, it cannot be said that counsel's failure to request an alibi instruction, if that was in fact the case, "undermines the confidence in the outcome" such that the "trial cannot be relied on as having produced a just result." *Strickland* at 694, 686. Thus, the state's court denial of this claim was not unreasonable and this ground for relief should be denied.

In Ground Twenty-Three, Fraise argues that counsel was ineffective for failing to seek suppression of any evidence seized during the warrantless search of his apartment. At the time of the search, Fraise was a parolee. *See* Pet'n. [2] 41; Pet'n [2-1] 34.

Mississippi courts recognize that a parolee enjoys "a lesser expectation of privacy."*Barlow v. State*, 8 So. 3d 196, 202 (Miss. Ct. App. 2008). Following the holdings of the United States Supreme Court in *Samson v. California*, the state recognizes that, "parolees are on the 'continuum' of state imposed punishments . . . [P]arole is more akin to imprisonment than probation . . . [and] is an established variation on imprisonment of convicted criminals." *Barlow*, 8 So. 3d at 202 (citing *Samson v. California*, 547 U.S. 843, 850 (2006)). Accordingly, Mississippi  courts "generally hold that although an inmate is released on parole, the parole authorities may subject his home and his effects, to inspection and search as may seem advisable to them," *Robinson v. State*, 312 So. 2d 15, 18 (Miss. 1975), and uphold searches of parolees' homes related to criminal conduct. *See Barlow*, 8 So. 3d at 202 (upholding search of parolee's home after arrested at roadblock for possession of narcotics). Thus, any motion arguing that the search of Fraise's home was illegal would be without merit.

However, assuming a valid argument could be made that the search was illegal, the fruits of that search would fall within the inevitable discovery doctrine. That doctrine allows the introduction of otherwise illegally obtained evidence "if it can be demonstrated that the evidence would, in all likelihood, ultimately have been discovered by constitutionally-permissible means." *White v. Stone*,

735 So. 2d 221, 223 (Miss. 199) (citing *Nix v. Williams*, 467 U.S. 431, 444 (1984)). In the days after the robbery, officers had an identification of the getaway vehicle, evidence that Fraise used that vehicle, his apartment number, and an eyewitness identification from Quintana. This evidence would have provided officers with probable cause to have a warrant issued for the search of Fraise's home, and the evidence would have ultimately been discovered by "constitutionally-permissible means." Because Fraise's counsel cannot be deemed ineffective for failing to raise meritless objections, *Kimler,* 167 F.3d at 893, Ground Twenty-Three should be denied.

In Ground Twenty-Four, Fraise argues that counsel was ineffective for introducing the police report of Thomas Clark into evidence without a limiting instruction. Fraise claims counsel's actions were erroneous because the report contained a reference to him being on probation and inadmissable hearsay that he owned the red Oldsmobile. Counsel introduced the report during Quintana's testimony as impeachment evidence of her eyewitness testimony. Quintana testified that she told officer Clark that the perpetrator was of mixed race, yet the report reflects that she described him as "possibly a white male with a dark complexion." Mem. [2-1] 28. Though the report contained some reference to ownership of the vehicle and his probation,   "[a] conscious and informed decision on trial tactics and strategy cannot be the basis for constitutionally ineffective assistance of counsel unless it is so ill chosen that it permeates the entire trial with obvious unfairness." *Green*, 116 F.3d at 1122.

After a thorough review of the record, the introduction of the report inclusion cannot be said to "permeate the entire trial with obvious unfairness." Assuming *arguendo* that counsel was deficient in choosing to submit the report into evidence, that decision did not prejudice Fraise. In light of the evidence introduced by the state tending to prove his guilt, including independent evidence that he owned and used the red Oldsmobile, there is not a substantial likelihood that the outcome would have

been different had the report not been introduced as evidence. Thus, the state court's denial of this ground for relief was not unreasonable or contrary to established federal law, and Ground Twenty-Four should be denied.

In Ground Twenty-Six, Fraise argues that counsel's failure to investigate rendered his representation ineffective. Fraise claims that the prosecution's case relied on "highly questionable and inconsistent identification" and circumstantial evidence and this evidence was not rebutted by any evidence from defense counsel. Mem. [2] 46. Further, Fraise claims counsel failed to investigate and competently present his alibi defense. In Ground Twenty-Seven, Fraise claims that counsel was ineffective for "failing to present his defense according to his version of the facts and instead presented an adverse version" that prejudiced his defense. *Id.* at 51.

Under the guidelines of *Strickland*, counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary. In any ineffectiveness case, a particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments." *Strickland*, 466 U.S. at 690-691. "When counsel focuses on some issues to the exclusion of others, there is a strong presumption that he did so for tactical reasons rather than sheer neglect." *Yarborough v. Gentry*, 540 U.S. 1, 8 (2003).

After a review of the evidence, counsel's trial strategy was clearly reasonable and well within the ambit of adequate representation. Fraise faults counsel for failing to request another alibi witness, Jose Hernandez, to testify. Yet in the record is an email from Astrid Hernandez to counsel, written June 29, 2007, less than two weeks before trial, stating that Jose, her brother, would not be able to testify "for whatever reason." S.C.R. [12-9] 71. He argues that counsel failed to use the statements Quintana gave to officers the night of the robbery to impeach her identification, what he calls "the

most compelling evidence." Mem. [2] 52. Yet, he also brings an ineffective claim for his introduction of that evidence by way of the officer's report. *Id.* at 42.

"There are countless ways to provide effective assistance in any given case. Even the best criminal defense attorneys would not defend a particular client in the same way." *Livingston v. Johnson*, 107 F.3d 297, (5th Cir.1997) (citing *Strickland*, 466 U.S. at 689.) There is no doubt that any trial strategy may be second guessed, however it is not this Court's "province, on habeas review, to second-guess counsel's strategic choices." *Emery v. Johnson*, 139 F.3d 191, 198 (5th Cir. 1997). Fraise's trial counsel certainly provided an adequate defense, guided by reasonable and "informed decisions on trial tactics and strategy"; thus,  the state court was not unreasonable in its dismissal of these claims, and this Court recommends that Grounds Twenty-Six and Twenty-Seven be denied.

In Ground Twenty-Eight, Fraise claims that counsel was ineffective to failing to seek discovery from the prosecution. On June 22, 2007, the prosecution filed "State's Response to Discovery" under Rule 9.04 of the UCCR. Therefore, it is plain from the record that discovery was produced to counsel, either in response to motion (though one is not contained in the record) or as obligated by rule 9.04 of the UCCR. This claim should be denied.

In Ground Twenty-Nine, Fraise argues that counsel was ineffective for failing to subpoena the 911 call placed by Quintana after the robbery. Fraise claims that the call "may have information on how she described the robber." In order to grant habeas relief for a failure to discover or present evidence, a petitioner "must state with specificity what the investigation would have revealed, what evidence would have resulted from that investigation, and how such would have altered the outcome of the case." *See Anderson v. Collins*, 18 F.3d 1208, 1221 (5th Cir.1994). As Fraise presents this Court nothing but conclusory statements about the contents of the call, this claim should be denied.

In Ground Thirty, Fraise makes a cumulative error claim. In *United States v. Hall*, the Fifth Circuit stated that "[o]ur clear precedent indicates that ineffective assistance of counsel cannot be created from the accumulation of acceptable decisions and actions." 455 F.3d 508, 520 (5th Cir. 2006). As all of Fraise's's ineffective assistance claims were reasonably denied by the state court for purposes of § 2254(d), his final claim of aggregate error is without merit.

## **RECOMMENDATION**

Based on the foregoing analysis, the Petitioner has failed to meet the standards of § 2254 to warrant federal habeas corpus relief.. Therefore, this Court recommends that the Petition [1] for Writ of Habeas Corpus be denied..

In accordance with the Rules of this Court, any party, within fourteen days after being served a copy of this recommendation, may serve and file written objections to the recommendations, with a copy to the District Judge, the U.S. Magistrate Judge, and the opposing party.  The District Judge at that time may accept, reject or modify in whole or in part, the recommendation of the Magistrate Judge, or may receive further evidence or recommit the matter to this Court with instructions.  Failure to timely file written objections to proposed findings, conclusions, and recommendations contained in this report will bar an aggrieved party, except on the grounds of plain error, from attacking on appeal unobjected to proposed factual findings and legal conclusions accepted by the District Court. *Douglass v. United States Auto Ass'n*, 79 F.3d 1425 (5th Cir. 1996).


This the    23rd    day of March, 2012.


_____*s/ John M. Roper, Sr.*_____
CHIEF UNITED STATES MAGISTRATE JUDGE